Your Honor, Terry Kelly is asking this Court to reverse the sentence that was imposed by the District Court and to remand the case for resentencing. The basis of this request is that two of the three predicate offenses used to enhance him as an armed career criminal are not, in fact, violent felonies and cannot be used as predicates. There are two of the two crimes that were utilized. One is shooting into a dwelling, and under this Court's precedent, shooting into a dwelling is a crime against property because it does not satisfy the force clause under 18 U.S.C. 924E. The problem you have with all that is your appeal waiver. Yes, sir. It's very broad. Yes, sir. It is. We enforce those, as you know. Yes, sir. And I would like to address that in just a moment. But the shooting into the dwelling does not satisfy the force clause because it does not contain the use, attempted use, or threatened use of physical force against a person. This is also conceded by the appellee in their briefs, so I will not go further unless there is an argument. The second offense involves burglary of a non-dwelling, in this case a church. There are two subsections to the Mississippi statute. The second one involves burglary of a church, and we would concede that that satisfies the generic definition of burglary. The generic definition of burglary is the unlawful or unprivileged entry into a building or other structure with the intent to commit a crime. A generic definition is limited to a burglary or other structure. The Mississippi statute at issue contains subsection 1, and we submit that that is what it is, and there are two clear reasons why. The first one is the fact that there is a seven-year statutory maximum sentence under subsection 1. Subsection 2, on the other hand, involving a church, carries a maximum of 14 years. Mr. Kelly was entitled under Apprendi to be advised of the statutory maximum, and we submit that he was because in that 2003 burglary indictment, he was advised no less than three times that his statutory maximum sentence was seven years. Further, and this is part of a de novo review by the Court, the language in that 2003 indictment mirrors subsection 1. It uses exact language from subsection 1 that does not exist in subsection 2. That includes the intent to steal goods, wares, merchandise that is kept for use, sale, deposit, or transportation. That's straight out of subsection 1 and does not appear in subsection 2. The fact that that statutory maximum is listed as seven years is covered by the Supreme Court decision in Mathis and this Court's en banc opinion in Herald stating that that is indicative of what subsection is used because Mr. Kelly was entitled under Apprendi to be advised of that statutory maximum. Your Honor mentioned that a waiver of appeals was executed by Mr. Kelly. It accepted ineffective assistance of counsel and prosecutorial misconduct. We submit that the waiver is not valid because there was ineffective assistance of counsel. Counsel, why should we take up that Strickland issue at this time? It's rare for the Court to address those issues on direct appeal, as Your Honor is aware. However, case law indicates that if the Court has sufficient information to resolve the merits of the claim, then it can be handled on direct appeal. We submit that it can be done in this case because this is strictly a matter of law. There is no need for additional factual development. Either the correct statute was utilized or it was not. It's as simple as that. So we submit that Mr. Kelly does not have the predicate offenses to allow him to be prosecuted as an armed career criminal. Now, he accepts responsibility for being a felon in possession of a firearm and could certainly be prosecuted for that, and that's what he admitted he did. The only question is what statute was utilized in sentencing Mr. Kelly. But we don't have the underlying facts as to why, if at all, counsel gave the advice that it did. Your Honor, there's absolutely no basis for him to incorrectly advise Mr. Kelly of these penalties because, for one, there's no reason not to challenge these convictions. Number two, while he admitted to being a felon in possession of a firearm, the Armed Career Criminal Act greatly increases his sentence. It carries a statutory maximum sentence of 15 years, a high end of the statutory range being life in prison. It also carries a $250,000 fine. A felon in possession count would carry a statutory maximum of 10 years. So that's a huge disparity in sentencing. Also, it greatly increases guideline range. So there is no practical reason why any attorney would advise their counselor or advise their client to plead to the Armed Career Criminal Act, which is one of the most severe statutes in terms of penalties that exist in federal law. In the Appleby's brief, they note that some of the other members of the Aryan Brotherhood pled to RICO counts, but even the RICO statute carries a less severe penalty. Its statutory maximum is 20 years, and it carries a maximum $25,000 fine, as compared to the not less than 15 or more than life for the armed career criminal, and a $250,000 fine, which is 10 years greater. So there's no logical reason why counsel would allow a client to plead to the Armed Career Criminal Act unless he qualified. What is your strongest case law authority for the proposition that we should go ahead and decide the ineffective assistance claim at this stage? Do you have a case that's factually or procedurally similar? The closest that I've found, Your Honor, is the Gulley decision out of this circuit and also the Castro-Delgado case from 2017. In Castro-Delgado, the court decided that if a defendant pleads to something that exceeds the statutory maximum, then a waiver is ineffective. And in this case, we submit that the proper statutory maximum was that for felon in possession under 18 U.S.C. 922G carries a 10-year maximum as compared to the 15-year minimum under the Armed Career Criminal Act. So those, Your Honor, I would submit are the two strongest cases that we have in terms of voiding the waiver. Now, Mr. Kelly is alleging ineffective assistance of counsel. Under Strickland, he would have to prove four things. First is that counsel's performance was deficient. Next, that it prejudiced Mr. Kelly. Third, that on an objective basis, counsel's performance was unreasonably deficient. And finally, that but for these errors, there's a reasonable probability that the outcome would have been different. We think the first two factors are readily satisfied. The counsel, his performance was deficient because he did not recognize clear Supreme Court precedent, which voided those predicate offenses. It prejudiced Mr. Kelly because it subjected him to greater statutory maximums, much greater, and much greater guideline ranges. So therefore, we think that prejudice is satisfied. The third factor is whether or not counsel's performance fell below an objective standard of reasonableness. In 2014, the U.S. Supreme Court decided the case of Hinton v. Alabama. And in that case, it said that if counsel is ignorant of a point of law or fails to do basic research, then that objective standard is not met. And we submit that that's exactly what happened in this case because the Mathis decision was decided three months prior to sentencing in this case. This was a landmark decision that was well-publicized in the federal criminal community and known to virtually everyone. Counsel in this case was not a member of the CJA panel, though he was appointed to the case. He recognized at the sentencing hearing and announced to the court he was not a member of the panel and was unfamiliar with some of the rules and procedures. In fact, he filed his sentencing memorandum late and the court declined to consider it. But if he had recognized that if the armed career criminal statute would not apply to Mr. Kelly, then he would have taken certain other reasonable steps. In other words, he could have filed a motion to continue the sentencing hearing. He could have filed a motion to withdraw from the plea agreement. He could have filed objections to the pre-sentence investigation report. And he could have objected to the sentence at the conclusion of sentencing as not being reasonable, which would have taken this off of a plain error standard of review and placed it in either a de novo or harmless error standard. Now, the fourth factor under Strickland is whether or not but for these errors, there's a reasonable probability that the outcome would have been different. In 2017, this court decided the Reyes-Ochoa case. That was also viewed under a plain error standard of review. The court examined the Virginia burglary statute and found it to be overly broad. In other words, that it's the definitions of the predicate offenses exceeded that of generic burglary. The court also found that there was a disparity, being that the high end of the applicable guideline range was 20 months lower than the guideline range utilized. The court found plain error and reversed, and also found ineffective assistance. In Mr. Kelly's case, the difference between the low end of his applicable guideline range, which we calculated 46 to 57 months, is 123 months below the guideline range that was utilized, a disparity six times greater than that in Reyes-Ochoa. So we respectfully submit that the fourth factor under Strickland is also satisfied, even on a direct appeal. On that plain error standard of review, Mr. Kelly would have to show that there was an error that's clear and obvious that affected his substantial rights, and that it seriously affects the fairness, integrity, and public reputation of judicial proceedings. We think that there is clearly error in this case, and it was, in fact, prejudicial to Mr. Kelly because, again, it subjected him to much higher statutory and guideline ranges. We submit that it would affect the fairness, integrity, and public reputation of judicial proceedings, just as in Reyes-Ochoa. And, in fact, it's even a far greater egregious result than what was seen in Reyes. So based on those factors, we submit that the plain error standard is satisfied. We would note that the appellees mentioned in their brief that there were four other predicate offenses that could be used involving burglaries of churches. We submit that that's not correct for the following reasons. The Mississippi statute as listed today, as I discussed, has two subsections, the second one dealing with burglaries of a church. The four prior burglaries involving churches occurred in 1987. In 1987, there was no subsection 2. In other words, a burglary of a church back then was prosecuted under what is now subsection 1. It's the identical language. The statute was revised in 1997 to include subsection 2. So though we concede subsection 2 would meet the definition of generic burglary, it didn't exist when those four prior offenses were committed and therefore cannot be used as violent felonies for purposes of the Armed Career Criminal Act. Your Honor, Mr. Kelly is respectfully requesting that the court remand the case for resentencing. We believe that the facts are sufficient to where the court can determine ineffective assistance on direct appeal. We think that ineffective assistance has been shown, and we think that the plain error standard has been met. All right. Thank you, Mr. Park. You've saved time for rebuttal. Yes, Your Honor. Mr. Levy. Thank you so much. May it please the Court. Your Honors, the government's position is that Mr. Kelly waived his right to appeal his sentence. Therefore, the government asks that the court dismiss Mr. Kelly's appeal. With that said, the government concedes that Mr. Kelly has a legitimate argument to challenge his sentence, but the government believes the proper forum for challenging his sentence is in the district court, where the court can evaluate the merits of his ineffective assistance of counsel claim. Of course, Mr. Park tells us that really all the facts are sufficiently in the record and that counsel's error was obvious enough. By implication, he says it would be a lot more efficient. Those are my words, not his, to go ahead and decide it now because it's all before us. Yes, Your Honor, and I understand his argument, and I understand that pleading guilty to a crime with a statutory max of, or statutory minimum, excuse me, 15 years, does seem, if he's not guilty of the statutory, if he's not guilty of an ACC enhancement, does seem on its face ineffective. However, what is not clear before this Court is exactly why Mr. Kelly pled guilty back in 2016 and the circumstances surrounding his plea of guilty. As the Court is aware, Mr. Kelly was a member of the Aryan Brotherhood. He was the treasurer. The Aryan Brotherhood was prosecuted by our office in 2016. The trial was in April of 2016. Mr. Kelly testified at that trial. Mr. Kelly admitted to his involvement with the Aryan Brotherhood in an interview in January of 2016. The government had sufficient evidence to charge Mr. Kelly with RICO violations if it wanted to, and the government's representation is not that it would have, but there was a lot going on at that time between the government, Mr. Kelly, and his counsel about what he would plead guilty to and the circumstances of his plea agreement. Why is that pertinent to a sentencing calculation, an ACCA calculation? I mean, he's pled guilty to what he's pled guilty to regardless of the background or what the other potential risks were of other charges. How would that impact? I understand your point, but I just don't see how it's particularly relevant to the calculation we're faced with here and his decision. Well, Your Honor, the government's position is that Mr. Kelly, the only way he can get around his waiver is through ineffective assistance of counsel claim. And to evaluate an ineffective assistance of counsel claim, as Mr. Park said, there has to be considerations of objective reasonableness and prejudice. Mr. Kelly received a 100-month sentence for under the charges which he pled guilty to, which was under the statutory max of a 922G, which is a felon in possession charge. He got a 100-month sentence. He had 18 prior felonies, five burglary of the church convictions. He was involved in a – he could have potentially been charged in a RICO conspiracy where many of the RICO conspirators received sentences over 100 months. So at the time he pled guilty, there may have been many other considerations as to why Mr. Kelly's counsel would say plead guilty to this charge, get your 5K and get under this 15-year statutory minimum because of the 5K and get 100 months, which may be a good sentence for him. It is very possible that Mr. Kelly got the best deal that he could have gotten under the circumstances. Okay. I guess I'm considering it as two separate issues, and you're telling me that two separate issues, one being the sentencing calculation, the second being the Strickland issue. And what you're saying is that it's all baked into the same consideration, and ultimately we wind up with his decision to plead guilty based on all of those factors to get a sentence that's obviously better than what he otherwise would have faced. That's correct. On the basis of the waiver and the waiver of the right to appeal, the government's position is the only way around that is through ineffective assistance. So everything has to be viewed through the lens of the ineffective assistance of counsel, and that requires the court to look at what was going on at the time to determine why he pled guilty to these charges. And the government's not conceding that he's not an armed career criminal. But what the government is saying is this is not the proper forum to be evaluating whether he is an armed career criminal, particularly since there are other charges out there and the government does not concede that burglary of the church is not a qualifying felony under the law. But the government's position is that the court should allow Mr. Kelly to raise that in a 2255 motion where it can consider, one, whether Mr. Kelly's — well, whether Mr. Kelly's counsel was ineffective, and the court can look at the other burglary of the church convictions. I mean, Mr. Park just argued that back in 1985 the statute was different. That's another reason to allow the district judge to consider in the first place what arguments the government and Mr. Kelly has as to whether burglary of the church conviction is a violent felony under the law. Judge Smith, you asked Mr. Park what his best case was to get around the waiver, and the government would submit that there are only few instances where the court has considered ineffective assistance of counsel claims on direct appeal. And he has conceded that. That's correct. But there are — the instances are rare, and I have found three cases that are not cited in our brief where the court did consider ineffective assistance of counsel claims on direct appeal, and I can cite those for the court if necessary. But in each of those cases, the court considered the ineffective assistance of counsel claim because the defendant raised the issue before the trial court, and the trial court had the opportunity to evaluate the ineffective assistance of counsel claim before appeal. So those are the rare instances that I believe and the government believes would warrant potentially looking at the ineffective assistance of counsel claim. Here, Mr. Kelly did not raise his ineffective assistance of counsel claim before the district court. He raised it in a 2255 motion, but the district court dismissed it because Mr. Kelly had already appealed. The district court dismissed it on the basis of jurisdiction. So he has not raised this ineffective assistance of counsel claim before the district court. And I will give you these cases. United States v. Brown, 891, F2D 307. United States v. Phillips, 664, F2D 971. And United States v. Gibson, 55, F3rd, 173. The other thing that Mr. Park mentioned that I would dispute is that the court can allow Mr. Kelly to get around the waiver because it's an illegal sentence or exceeds the statutory maximum. Mr. Kelly received a 100-month sentence from the district court, which is below the statutory maximum 922g charge. I would submit that under this Court's precedent, a legal sentence or a statutory unconstitutional sentence is not where he started in the guideline range and then came down, but where he ended up. Well, as you know, our jurisprudence, unfortunately, our case law is a little bit fuzzy on that. We have some cases that maybe suggest that any erroneous sentence, therefore, violates the statute and can be stricken for that reason under that exception. Yes, Your Honor. I would refer the Court to United States v. Beatty, 980, F2D 977, which is cited in our brief and our footnote, which the Court said, After the defendant waived her right to appeal, the district court could err in its application to sentencing guidelines or otherwise impose an illegal sentence. Yet the defendant who has waived her right to appeal cannot appeal these errors. And I would just reiterate to the Court that the government is not saying that Mr. Kelly cannot raise the challenges to his ACCA enhancement that he has raised here. The government's position is that this is not the proper forum for him to do so. He was dismissed without prejudice, the 2255? He was dismissed without prejudice by the district court? It was dismissed without prejudice, is my understanding. And the government has, I think the defendant in his footnote or even maybe in his brief, in his reply brief, requested that relief if the Court dismisses on the basis of the waiver. And the government's position is that is exactly what should happen here, is the Court should dismiss on the basis of the waiver, not get into all these difficult ACCA issues, because the burglary of a church issue, the government presents or submits as a difficult issue for the Court, or at least from the government's perspective. He wade through the weeds in those all the time, as you well know. Yes. Yes, Your Honor. And I'm familiar. But as far as the burglary of a church conviction, just to speak on that briefly, the government's position is that it is a violent felony because burglary of a church is an element of subsection 2 of the Mississippi burglary of a non-dwelling statute. And in the Stewart v. State opinion, which the government referenced in his brief, the Court found when there was a disparity or was, I shouldn't say a disparity, when it was not clear whether the defendant was charged with subsection 1 or subsection 2 of that statute, it looked at the elements over, well, there was no penalty in that case, but it looked at the elements first to determine what subsection the defendant violated. Here, the government would submit that the prior conviction that is before the Court for burglary of a church does qualify, but also he does have four other burglary of a church convictions, and Mr. Part just stated that there may be other considerations regarding the interpretation of the statute to determine whether it was divisible back in 1985. There could be another burglary of a church conviction out there that does not look like the one that's before the Court that may also qualify. There's just so many considerations that are not before the Court which would make it improper, the government would submit, to rule on Mr. Kelly's ineffective assistance of counsel claim on direct appeal. All right. Thank you, Mr. Levy. Mr. Park, you've saved time for rebuttal. Most ineffective assistance of counsel claims involve evidentiary issues, motion practice, or calling witnesses. This is strictly a matter of law. Was the right statute applied or not? Even dealing with whether or not subsection 2 existed in 1987 is, again, just a matter of law. It did not exist until 1997. Would this be the first case in which we would have gone ahead to address the ineffective assistance claim where it was not considered in the district court? No, Your Honor. I believe the two cases that we discussed earlier, the Gully case indicating that the question is whether or not the Court can evaluate fairly the merits of the claim on direct appeal. That, and I believe, and I may be incorrect about this, but the Castro Delgado case in 2017 also, I believe, was on direct appeal. Please don't hold me to that. But that, again, is one where it says that the waiver is not effective if the Mr. Levy argued that Mr. Kelly received a 100-month sentence, which is below the statutory maximum. But the only reason he received that is because the motion for downward departure allowed the district court to go below the mandatory minimum of 180 months. And we believe that that consideration should not have started from 180 months but from the properly calculated guideline range of 46 to 57. Supreme Court cases of Rita and Gall say that that's where all sentencing begins, with a properly calculated guideline range. We don't have that here. We, again, submit that this is not part of some trial strategy. In terms of the RICO claim, I've already explained how that statute carries less severe penalties than the armed career criminal, which is probably one of the most severe federal penalties. There was no negotiation about a plea here. He was indicted as an armed career criminal. Then he was arrested. There was no plea to a lesser offense here. He pled to the most severe offense available. So, Your Honors, based upon those considerations, we submit that the ineffective claim can be evaluated by this court on direct appeal. And we're asking the court to reverse and remand for resentencing. Thank you. All right. Thank you, Mr. Park. Your case is under submission.